Case number 20-6226, Donald Phillips v. Shastine Tangilag et al, or admins to be. 15 minutes for the plaintiff. 15 minutes to be shared by the defendants. Mr. Gregory A. Belsley for the appellate. Good morning, Mr. Belsley. Please tell me how much time you'd like for rebuttal. Good morning, your honors. I would request three minutes in rebuttal. Okay, you may proceed. Thank you. May it please the court, my learned opponents, my name is Greg Belsley. I'm appearing this morning on behalf of the appellant and plaintiff in the case below, Mr. Don Phillips. Mr. Phillips is an American citizen incarcerated in prison. Since 2015, he has had a debilitating, painful condition in his left calf, and he has had one question. Is this permanent? If not, can it be fixed? Given the period of time that has passed in this litigation, he now has another question, and that is, if it can't be fixed now, could it have been fixed previously? And is its permanency a consequence of the delay in its treatment? There is no question in this case, but that Mr. Phillips satisfies the legal requirements for establishing a serious medical need. This is a painful, debilitating condition, although the defendants have cited some contra evidence that is to at least an issue for a jury, and that is not determinative. Likewise, the defendants, specifically Drs. Tangelang, Jefferson, and Lewis have all acknowledged that if Mr. Phillips' condition did not improve after an MRI that was conducted in the summer of 2015, he would be entitled and would need to be, as a matter of common sense, reassessed to determine whether or not his condition could be surgically alleviated. Can I ask you, you mentioned Dr. Jefferson, and there's a state actor question in this case, whether Dr. Jefferson is a state actor, and I'm curious, I guess your position is, if there's a constitutional duty to provide care, which there is under the Eighth Amendment, that means any party that provides care is automatically a state actor, or is it narrower than that? The concern I have with your position, it seems reasonable to me, but there's also a constitutional duty to provide food, there's a constitutional duty to provide shelter. Would your position mean that a food entity, a food sourcing entity that provides food to prisons automatically becomes a state actor? The public utility that provides the heat for the prisons, is that a state actor? How far does your position go? Well, your honor, in this case, in terms of the provision of medical care, it is narrower than that. I'm not suggesting that if an inmate suffers an emergent medical condition and has to be run to an emergency room, and he is seen by the doctor on rotation, that that doctor automatically becomes a state actor. Why is Jefferson different than that? I guess that's, what's the test you would have us employ so that it is narrower than the hypotheticals Judge Murphy gave us? Yes, sir. The difference with Dr. Jefferson is that Mr. Phillips was sent to see Dr. Jefferson specifically with a request from the doctor, specifically Dr. Tangelag, at Kentucky State Penitentiary to determine, Dr. Jefferson was to determine whether, what diagnostic studies were necessary, what treatment was necessary. Can I skip to the chase on him and just ask? So, it seems to me not much different than an emergency room when you say, in fact, an emergency room seems to do more, but what I understood Jefferson to do, tell me if I'm wrong, I may have the facts wrong, is drain what I'll just call the wound and then say if it doesn't improve, surgery would be necessary. Am I stating that incorrectly? Was it someone else or was it Jefferson? It was Jefferson. You're correct, your honor, but Dr. Jefferson wasn't a doctor on rotation. He was a specialist on whom the Kentucky State Penitentiary, who Dr. Tangelag had specifically sent Mr. Phillips out to see. So, go back to the state actor question. I don't get the distinction between him and the hospital. The prison sends someone out to see an outside person, whether it's an emergency, a specialist. So, use this hypothetical. If they sent someone for a particular surgery, so let's say instead he sends him to Jefferson to do the surgery he wants, would he be a state actor? I believe so, your honor. But what if he breaks a leg and goes to the hospital and they put him in a cast? You're still sending him for a specific task. But you're not identifying a specific doctor at that health care facility on whom you were going to rely for advice on how. So, that would be your state actor? Yes, sir, and it's evidenced by Dr. Tangelag's communications directly with Dr. Jefferson. When she sent Mr. Phillips to Dr. Jefferson, she asked Dr. Jefferson, Dr. Jefferson, is this something you can surgically fix? I agree that that's a distinction between at least a case where there's not a personal referral, but why does that matter to what the constitution means by state actor? So, it's a factual distinction, but why is it legally significant? I get the theory that if it's a performing the function becomes a state actor. I get that theory, but I don't understand why if it's a personal referral versus just a referral to a hospital and the person who gets it, it still seems to be a public function. Well, your honor, the way I read the cases, and I may be wrong, when somebody goes to the ER, the doctor they see or the medical professional they see is a matter of chance. The way I read the cases says, look, if you are going to send an inmate to a physician specialist outside, in particular, by name, not let's send him to an orthopedist and he gets Dr. Jefferson. You're sending him to Dr. Jefferson specifically, and then you're asking Dr. Jefferson to tell you how this individual should be treated. I think that makes him a state actor. This is not an issue of chance, and the state system is relying upon him to control. You would agree if you send him to a particular practice to get that opinion and be a state actor. You would argue that, right? It's not just a particular person. You're drawing a broader circle than that, it seems to me. No, your honor, I'm not. Would a practice fall within it? I'm sorry to interrupt you, but would a practice fall within it? I don't know, Judge. I would say that's a much more difficult argument to make, because I think the issue of chance is critical, you know. I have a question. What's your best case that you're relying upon? Is it the West case or something else? Yes, sir. It's West v. Atkins, Carl v. Muskegon County. In particular, I think the Carl v. Muskegon County paragraph that this court included is critical. It says, finding no state action in a case like this would incentivize the state to contract out piece-by-piece features of its prison health care system and therefore avoid accountability. I mean, this is not a chance encounter between an inmate with an emergent condition and a physician or a health care worker that happens to be on rotation in the ER that night. Would a doctor still be subject to malpractice suits, and wouldn't a prison still potentially be subject to an Eighth Amendment suit? In other words, you're not saying that if you refer someone and they provide inadequate care, you're not conceding, I assume, that the prison's not liable. Oh, no, sir. No, sir, I'm not. Okay. So then why wouldn't the inmate have multiple remedies, one against the prison and another against the doctors for medical malpractice, like the rest of us would have? Oh, I think he does. I think he's got a state claim against Dr. Jefferson for medical malpractice. So explain to me, you might be explaining to me the logic of our own but how could the prison avoid liability by simply referring someone out? I mean, I don't know that that can be right. Well, Your Honor, I'm just referencing the court's rationale in Carl v. Muskegon County. And I think it was well-deserved because 1983 exists for a reason. And to take a doctor under these circumstances, out of the penumbra of 1983, by finding he was not a state actor, I think has a significance that could operate adversely to plaintiffs like my client. Can I switch gears a little bit from the state actors? It's the Eighth Amendment theory overall. I'm curious to get your reaction. I guess I'm concerned. It seems like the standard of care for this type of injury is not surgery. At least that's what their experts, the defendants experts says. How are we supposed to assess whether there's even been malpractice or even the higher standard, whether there's been delivered indifference without some type of counter-expert evidence? I know our case law seems to be somewhat confused on when you need expert testimony to prove your injuries and maybe latent injuries or delayed care. But this strikes me as there was some treatment provided in this case. And your client might just be disputing that there should have been more treatment. So why in determining whether there should have been more treatment, why isn't it inappropriate in this case to say, well, you should have provided expert testimony showing what they did was inadequate? Well, Your Honor, the perplexing thing about this case is that Dr. Jefferson testified in his deposition way back in March of 2018. He was the first deposition I took. And I took his deposition because I anticipated that he was going to tell me what he did. And that is there was an indication on the MRI that Mr. Phillips' mass had decreased in size. He told Dr. Tangelang, this was Dr. Jefferson's testimony. It looks like it's decreasing. If it goes away, fine. If it doesn't, he will need to be reassessed. That is what Mr. Phillips has been fighting for. We have been trying since that time. The mass obviously didn't go away. It was palpated by Dr. Lewis in September of 2019. He felt it. Mr. Phillips has said it continues to be painful and debilitating. We have been, and this is one of the reasons I've asked the court as part of my prayer, that the defendants be ordered to send him out for the MRI that Dr. Jefferson said he would need if the mass didn't decrease to determine whether it could be fixed. And which his own, and which is there, Mr. Belsley, between care and it seems to me he got care and your complaint is he didn't get adequate care. Yeah. Because he got it drained. He had it sent back. I get what you're saying about Jefferson. I'm still kind of wondering why Jefferson's in this lawsuit. It seems, I don't know what he did wrong versus what you're complaining. I understand what you're the prison doctors did wrong, but why is it, it seems to me what you're saying is he got care. He got it drained. He got a recommendation. He just didn't get adequate care. Explain to me why that isn't it. That's not it, your honor, because he didn't get care. It appeared. Isn't care if he's seen and treated, I get that he didn't get treated sufficiently as your complaint. He's never been treated, judge. Do you view physical therapy as treatment? I would think lots of people would view physical therapy as a post-surgery and it's common or just if you don't think surgery is appropriate, then physical therapy might fix the injury. Why isn't that considered care at least? Even if you think it's inadequate, why isn't it care? Well, this court's authorities say you can't provide ineffective treatment. A serious medical need requires effective treatment. I agree with that point, but in order to determine, I thought in the adequacy of care cases, in order to determine whether something was ineffective, you need expert testimony and I'm not certain that you have that here. No, I do, judge. Dr. Jefferson, Dr. Lewis, Dr. Tangalang have all said that he should get a reassessment of his condition to determine whether the condition can be alleviated or whether it can no longer be alleviated. But he did get reassessed in 2018 and they found that nobody in this lawsuit has suggested that surgery is appropriate. They suggested it may potentially be appropriate, but it wasn't certainly the standard of care and I don't see, I'm not entirely sure what your client, is your client requesting surgery or what is your client requesting? My client, very simply, your honor, my client wants to know if his condition can be fixed and frankly, judge, we could have found this out back in March of 2018 when Dr. Jefferson testified that he was entitled to a reassessment because his mass hadn't gone away and I asked the defendants to send him out. They wouldn't. I asked Judge Russell to order it and Judge Russell refused. What is your deliberate indifference by Dr. Jefferson? He's deliberate. He's just seeking for malpractice. Your honor, I believe when Dr. Jefferson got the letter from Mr. Phillips that said, I'm relying on you to help me and I was told by Dr. Tangelang that I needed no future care or treatment whatsoever, ever, that Dr. Jefferson was required to respond to that somehow. Pick up the phone, write a letter to Dr. Tangelang and said, you got this wrong. What you told this man was inaccurate. He didn't do that. Mr. Phillips remained his patient and he did not intervene and he knew from Mr. Phillips letter that what Dr. Tangelang had told him, which Dr. Tangelang admitted was probably the impression she gave Mr. Phillips, was inaccurate. I see my time has I'll end there. Any further questions? No. Okay. Uh, thank you, Mr. Bell. So you'll have your full time for rebuttal because you were answering questions when it went over. Thank you, sir. Okay. Which council is going first? It'd be me, your honor, William Sharp. Go ahead, Mr. Sharp. Thank you. May it please the court. My name is William Sharp, council of record for CCS, Dr. Lewis and Dr Clifford. In addition to addressing any questions the court may have about the arguments contained in our joint brief filed on behalf of my clients and co happily Dr. Tangelang, I will address two issues. First, this court should affirm the district court's grant of summary judgment as to Mr. Phillips eighth amendment claims against CCS, Dr. Lewis and Dr. Tangelang because he did not properly exhaust available administrative remedies regarding those claims prior to filing suit. Specifically, he failed to name those appellees in the health care grievance upon which those eighth amendment claims are based, which violated the Kentucky Department of Corrections policy requiring that all individuals to a grievance be named. Those omissions are particularly instructive because he submitted and fully exhausted that grievance before the events that formed the basis of his eighth Second, irrespective of exhaustion, summary judgment should nonetheless be affirmed on the merits as to all of Mr. Phillips's eighth amendment claims because he failed to present verified medical evidence to establish either that appellees conduct or the denial of the his desired surgical treatment caused his claimed harm or that the desired surgical treatment is medically necessary to alleviate his legs. So the best case, the best counter, I guess, to your to the district court's opinion, in my view, is you have to take the facts in the light most favorable to Phillips. And Phillips did say that Dr. Tangelang essentially told him at the follow-up council or follow-up meeting after Jefferson that we will provide nothing else. And so if we have to take that statement as a as a fact at this stage, could that show deliberate indifference given that Dr. Jefferson's opinion was, you know, reassess and see if it goes away? First, I don't necessarily agree that that's the fair import of the testimony that's been cited by appellant. But for purposes of this question, the fact remained that Mr. Phillips knew and the testimony showed he was available to avail himself of primary care services at any time. The decision at which in August of 19th of 2015 not to provide the surgery that he demanded was one that did not preclude him from again seeking primary care services if he felt like he had an ongoing complaint or a persistent complaint. In fact, he availed himself of the he even discussed it in Mr. Sharp. Yes, you can see. I mean, go back to Judge Murphy's question, which is if Dr. Tangelang said, basically, we're not going to provide any more care for that. Would you concede that if you didn't like most favorable to the plaintiff that would be sufficient in isolation? You are. It's hard to say because the even Dr. Jefferson testified that a reassessment might yet reveal there would be nothing to be done. And the only medical Jefferson said, if it doesn't improve, he's entitled or not entitled, but he may need surgery. My recollection of Dr. Jefferson's testimony was that if it didn't improve a reassessment, which may yield, there's nothing to be done or it might yield surgery. But there was certainly no certainty as to what treatment options, if any, would be available if they were to improve, which is entirely consistent with the fact that Mr. Phillips has asserted a permanent pain and disability associated with this injury. And he's claimed throughout this litigation that the onset was in twenty fourteen. His medical records actually establish that the onset was in twenty ten when he complained then about a calf, a mass in his left calf. He submitted a health care request. He received treatment from Dr. Conrado. And then there was a period of multiple years before this lawsuit was initiated in which he associated the an element here. Phillips's failure to present verified medical evidence or any expert or to identify a disclosed expert who can opine about the standard of care or that any act or omission of the defendant's appellees or the failure to provide the desired surgery actually caused the pain that he's complaining. Is there is there any just practically speaking about the case? I mean, Mr. Phillips, I think there's no dispute that you had this large lump in the side of his leg and it seems to not have gone away for many years. Is there any kind of like it seems like that could be described as an objectively serious medical need that any any person would think if I have this large softball sized lump in the side of size side of my leg that I would need to get treatment for that or I would need to seek a doctor's opinion and try to help fix with the pain. Why can't we just use that as a basis for saying that it creates a jury question? Well, your honors, he received treatment. There's no question about it. Mr. Beasley's assertions notwithstanding in the 18 months when he first reported this, setting aside the 2010 reporting, when he reported this in May 2014, there was a period of 18, 15 months in which he received assessments from nurse practitioners, doctors, he was referred out to a specialist, he received an ultrasound, a CT, an MRI. I mean, there was a Can I? Why? I mean, this may be this is different in kind, but why? Mr. Beasley's point, which he brings up in the brief, and he brought up again, an argument. Why not? When you get to litigation, and Mr. Beasley asked, just refer him back to someone like Jefferson and let him make a second analysis of it. Why wouldn't you do that? I don't I don't understand why that wouldn't occur. Your honor, I can't speak to the strategy decisions that were made from a litigation standpoint prior to my entry of appearance. But I will say in terms of that request, litigation is not the mechanism by which inmates seek medical treatment. There's a very modest and reasonable grievance health care request policy put in place at the prison. Filing a I understand and sympathize with that point. But I why not just from a practical perspective? I'm just curious. Like if, if he says, hey, just refer him back to Jefferson, let him make that assessment. He said he would need. I don't understand why that just wouldn't happen. I get it might not be constitutionally mandated. A court might not need to get involved. I just don't understand why wouldn't the prison do that? Well, he, he could have at any time submitted a health care request after filing this lawsuit to seek a reassessment of that condition. More than two years lapsed after the August 2015 note of Dr. Tangelag, in which he didn't do so. He has done it now. He has done it now. Physical therapy seemingly did not help him. Why, why, why not at this point? What's, what's the next step aside from the litigation? What's the next step for treatment? He had physical therapy, then he seemed to talk to Dr. Clifford. Is it just it's palliative care now at this point that there's nothing to be done? Well, even Mr. Phillips, his own retained experts didn't diagnose his condition or even identified on the imaging that they perform. So in terms of, you know, the, it must bear in mind that the complaint that he's complaining of his pain and the documented medical records that have been provided established that it didn't affect his movement. It didn't appear to affect him from a physical standpoint in terms of his ability to engage in physical therapy. In fact, he said he improved during physical therapy, but then demanded surgery and ended physical therapy. I have a question. I'm sorry. Has any position in this case said that he needs surgery? No, sir. Okay. Your honors. And the constitutional question regarding deliberate indifference can be avoided under the doctrine of constitutional avoidance because quite simply, Mr. Phillips failed to his complaints here is that he did not receive a surgery to which he thinks he's entitled and to which no doctor has said he is mandated to alleviate his pain. But he exhausted the grievance upon which he relies the month before that decision was communicated to him. Your honors, for all these reasons, in those, in addition to those contained in our brief, we would ask the court to affirm the district court's grant of summary judgment in full. Thank you. You may proceed. Thank you. May it please the court counsel. My name is Jason Coltharp. I represent Dr. Ted Jefferson in this case, who was a private physician practicing in Paducah, who accepted a referral for Mr. Phillips. The claims against Dr. Jefferson were properly dismissed for several reasons, starting with the plaintiff's failure to properly exhaust his administrative remedies that were available to him. In particular, hit the grievances upon which he relies to claim. Exhaustion were both filed and adjudicated prior to the letter that he sent to Dr. Jefferson that letter if if an ordinary doctor gets a letter from me or you saying, Hey, help me out. Like what would Jefferson do? Wouldn't he do something in receiving that letter? I don't I don't know. I don't practice with Dr. Jefferson. And that's not something I personally have been involved with. But I would suspect that likely he would he would engage his office staff to call that patient and try to get them to come back in. I mean, doesn't a doctor have an obligation to respond if a patient a prior patient reaches out says, Hey, it's not improving. You recommended surgery. I'm reaching out. Like if I call my doctor, they call back. Well, and this is a circumstance to where Dr. Jefferson had referred had had gotten the referral, had evaluated Mr. Phillips and then had sent him back to the to the initial treating physician. So he's he's now under the care again of his primary doctors. And in those positions or reach back out to Mr. Phillips. So you're saying you're saying if a doctor treats me for something and then I go back to my primary care physician, they can ignore whatever requests I make to them if I'm still having problems without any repercussions? Well, as a as a short answer, yes. The standard of care sets the bare minimum of practice requirements. Perhaps that's not good client relations or patient relations, but it does not itself make medical malpractice once the patient. Where's the evidence that that's not the standard of care? Was that actually introduced that the standard of care is you have no duty to respond to a patient letter? Well, your honor, the obligation is upon the plaintiff to establish the standard of care. And there's been no expert testimony in this case that saddles Dr. Jefferson with that duty. We've cited and in fact, I cited a case that was out of outside of Kentucky, but one where in a similar circumstance, a patient was referred out and and contacted the physician. I believe it was in Ohio and the court found no duty to to to follow up. And there are two Kentucky cases upon which the plaintiff relies in asserting that there's a duty to to follow up. And those both both of those cases involve expert testimony from the plaintiffs and the court was evaluating whether that sufficiently stated the cause of action against those those physicians. And I think in two of those cases, well, I guess in one, they said a directed verdict on behalf of the doctor was improper, given the expert testimony that established the standard of care in that case. In the other, the the family doctor who referred the patient out for surgery was was properly granted a directed verdict. And then the surgeon who accepted the referral was was properly awarded a jury verdict despite that standard of care testimony. So there's no support in the case law for the contention that such a such a duty can be imposed in the absence of expert testimony establishing it. And so because there's no expert testimony here, saying that the standard of care is that Dr. Jefferson, you need expert testimony to establish that a doctor can't ignore their patients complaints. Well, this is not the case of a doctor ignoring their patients complaints in the context of an office visit. Go back to what I said. So you would concede that they don't need expert testimony to establish that to establish that a doctor would violate the standard of care if they ignored their patients complaints. I think it would depend upon the severity of the complaints and whether that is something that an ordinary person would be familiar with that, that x complaint requires y treatment. I think if as I could say, Hey, doc, I need surgery, my leg is killing and the doctor can't ignore that they can say no, you don't need surgery. But can they really just ignore my that can't I mean, I don't know why I need expert testimony for that. Well, I suppose if the complaint is that I went to see the doctor, the doctor didn't evaluate me didn't do anything just wrote down my symptoms and left the room. I suppose that would be obvious enough that a that a lay jury would understand that that's malpractice. So why? Go ahead. That's I just had the patient that was going to diagnose that person. Was that what he was doing? Or was he actually treating the plaintiff? I think he could take on either role. I think if he believed that surgery was appropriate, he would have he would have treated that that presuming that the prison can accepted that recommendation. But yes, he would have provided treatment in that case. His first duty was to was to evaluate the problem and determine what the appropriate course of action was. And in this case, he determined that surgery was not required. So he didn't provide that affirmative treatment. So he was just a diagnostician in the context of this case, but he was there to perform both roles if appropriate. And I see my my time is quickly up. So unless there are other questions, I will see, see the podium. Thank you. Thank you, counsel. Oh, are there any other questions? I'm sorry, I should have asked Murphy or just OK, Mr. Belsey, you have your full three minutes. You're muted, Mr. Belsey. I do that all the time, so don't worry. I'm sorry. Thank you, Your Honor. Your honors are exactly correct. Mr. You write a physician who is treating you. Uh, the doctor can't abandon you. This is a matter of common sense, and I've cited to the court the state cases that say I don't need expert testimony for the reasons your honors have already pointed out. As an example of how strained this argument has become, Dr. Jefferson's expert was reduced in his deposition to arguing that Dr. Jefferson, in fact, had responded to Mr. Phillips by putting his Mr. Phillips letter in his file. So, no, there is a clear duty. It's a commonsensical duty, and you just can't simply abandon your client. What what what is the duty? It's a it's a somewhat unusual situation in that he obviously doesn't have control of the of the patient. The prison does, and it's the prison medical staff. It doesn't strike me as unreasonable to think, well, if the prison medical staff thinks they need a second opinion from me again, they'll let me know. And is that assumption necessarily unreasonable that I get my I'm a specialist who gets my referrals from the and not directly from inmates at the prison? I don't think I don't think a physician can do that yet. This physician, Dr. Jefferson, testified it looks like his mass is decreasing. If it doesn't continue to decrease, he needs to be assessed again for surgical intervention. He says that what that's what he told Dr. Tangelak. Then he's informed by Dr. Phillips, by Mr. Phillips, that Dr. Tangelak has instead said, you're getting no future treatment whatsoever, even though by that time, it was clear that his mass hadn't decreased in size. All he had to do, Your Honor, was pick up the phone. That's all he had to do. And I think that's a that is not an unreasonable requirement. And it was the least he could be expected to do, given the physician patient relationship that clearly existed between him and Mr. Phillips. Question. Do you think that Dr. Jefferson could have proceeded to undergo surgery with your client without the permission of the other of the defendant state Department of Corrections? It couldn't. No, sir. He obviously couldn't. And in fact, when Mr. Phillips UK doctors said that he needed to be sent back for an MRI said that they could evaluate him for further surgical intervention. The defendants refused. And Dr. and Judge Russell wouldn't order them to do so that so that's where the discovery stopped. And effectively, you know, Judge the par you put your finger on it. I, I don't understand why this wasn't addressed years ago. And instead, we have a situation here where a man continues to have a serious medical need. It may now because of the delay have become permanent. There is at least a jury issue here on critical facts that require that the judgment below be reversed, and the case be remanded for trial. Thank you, Mr. Belsley. Are there any further questions? Judge Murphy or Judge Seiler? Okay, Mr. Belsley. Thank you. Council all of you. Thank you very much. I'm sorry about the technical glitch at the beginning, but your arguments were excellent. And we really appreciate your time and effort in this case and the thoughtful briefs. And we'll take the case under advisement. Thank you for policing yourself with the time limits. I know we ran you over a few times, but I appreciate all the attorneys being diligent.